1 Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
2 Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
3 Los Angeles, CA 90010
Tel. (323) 736-2230

4 Attorneys for Plaintiffs, Tawny Gonzalez,
Sandra Escobedo, as Guardian ad Litem for
5 J.L.G., a minor, and T.J.G., a minor

6

7 **UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**
8

9

10 TAWNY GONZALEZ, an individual,     Case No. 2:24-cv-1986
SANDRA ESCOBEDO, as Guardian ad
Litem for J.L.G., a minor, and T.J.G., a
11 minor     **COMPLAINT FOR WRONGFUL
DEATH AND DAMAGES**
12      Plaintiffs,

13        v.     **DEMAND FOR JURY TRIAL**

14 COUNTY OF SANTA BARBARA,
SANTA BARBARA COUNTY
15 SHERIFF'S OFFICE, SANTA
BARBARA COUNTY SHERRIF'S
16 SERGEANT RICHARD SOTO,
SANTA BARBARA COUNTY
17 SHERRIF'S DEPUTY JOHN HEIL;
SANTA BARBARA COUNTY
18 SHERRIF'S DEPUTY MICHAEL
REYNOSO, SANTA BARBARA
19 COUNTY SHERRIF'S DEPUTY
DAVID VANDERPOL,
20 SANTA BARBARA COUNTY
SHERRIF'S CUSTODY SERGEANT
21 JEFFREY KOELLER, SANTA
BARBARA COUNTY SHERRIF'S
22 CUSTODY DEPUTY IAN UR, SANTA
BARBARA COUNTY SHERRIF'S
23 CUSTODY DEPUTY JOSE ALEJO,
and DOES 1 TO 20,
24
     Defendants.
25

26

27

28

1

**INTRODUCTION**

1.     In December 2022, Santa Barbara Sheriff's Deputies conducted a welfare check on Jaime Angel Gonzalez after he complained of chest pain. Instead of treating the situation like a medical emergency, the deputies took Mr. Gonzalez to a county jail for an alleged parole violation. Once in custody, Mr. Gonzalez did not receive medical care, was not placed under observation, and was later found unresponsive. The deputies did not call for medical aid or an ambulance until Mr. Gonzalez regained consciousness. Mr. Gonzalez died at a local hospital shortly thereafter. Had defendants treated the situation like a medical emergency and heeded the welfare check request, Mr. Gonzalez would not have died.

**JURISDICTION AND VENUE**

2.     This case arises under 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, and various state-law governmental tort statutes. Jurisdiction in this Honorable Court by 28 U.S.C. §§ 1331 and 1343. Plaintiffs' state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in Central District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in the County of Santa Barbara, California. This is an action for damages and such other and further relief pursuant to 42 U.S.C. § 1983, to redress violations of the decedent's rights protected by the United States Constitution, by persons acting under color of law. This is also a survivor's action and one for wrongful death brought pursuant to the Constitution, statutes and/or common law of the State of California.

**PARTIES**

4.     Plaintiff Tawny Gonzalez is the wife of Jaime Angel Gonzalez, deceased ("the decedent"). Plaintiff J.L.G., a minor, and plaintiff T.J.G, a minor, are two children of Jaime Angel Gonzalez, deceased ("the decedent"). Plaintiff Sandra Escobedo is the grandmother of, and the guardian ad litem for, J.L.G., a minor, and T.J.G., a minor. Plaintiffs J.L.G., a minor, and T.J.G., a minor, through their Guardian ad Litem Sandra

2

Escobedo, and Tawny Gonzalez (collectively referred to as "Plaintiffs") are all residents of Santa Barbara County, State of California. Decedent died intestate. Plaintiffs Tawny Gonzalez and J.L.G. and T.J.G. are decedent's beneficiaries and successors-in-interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the decedent's interest in any action or proceeding on decedent's behalf. Since J.L.G. and T.J.G. are minors, and their mother Tawny Gonzalez is a party to this lawsuit, plaintiff Sandra Escobedo is the minors' Guardian ad Litem for purposes of this lawsuit. This action is filed pursuant to CCP §§ 337.60, 377.30, et al and a declaration is filed under CCP 377.32. Decedent's death certificate is attached herein as Exhibit A. Plaintiffs sue as Decedent's successor in interest, and also individual for violation of their civil rights under the Fourth and Fourteenth Amendments and pursuant to California state law, to seek relief as a result of the unlawful and wrongful death of Jaime Angel Gonzalez. This action is filed pursuant to Cal. Civ. P. §§ 377.60, 377.30, and a declaration is filed under Cal. Civ. P. § 377.32.

5.      Plaintiff Tawny Gonzalez is the wife of the decedent, and plaintiff J.L.G. and plaintiff T.J.G, are decedent's two children. Plaintiffs also bring claims on behalf of themselves.

6.      Defendant County of Santa Barbara ("County") is a governmental entity organized and existing under the laws of the State of California. Under its authority, Defendant County operates and manages Santa Barbara County jails, including the Northern Branch Santa Barbara County jail facility, and is, and was at all relevant times mentioned in this Complaint, responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Santa Barbra County Sheriff's Department ("SBSO"), and its respective employees and/or agents. In this case, the County and SBSO acted through its agents, employees, and servants, including their policymakers. At all relevant times, Defendants County, SBSO, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment,

3

assignment and removal of individual members of the SBSO, including those individuals charged with protecting the health and safety of detainees and arrestees at County detention facilities, including decedent Jaime Angel Gonzalez, and to assure that said actions, policies, rules, regulations, customs, practices and procedures of the SBSO and its employees and agents comply with the laws and constitutions of the United States and the State of California.

7.     The following defendants is and were at all times in this complaint an individual employed by the County of Santa Barbara, acting within the course and scope of employment also within actual and apparent authority as an officer of a public entity, the Santa Barbara County Sheriff's Office: defendant Santa Barbara County Sheriff's Sergeant Richard Soto; defendant Santa Barbara County Sheriff's Deputy John Heil; defendant Santa Barbara County Sheriff's Deputy Michael Reynoso; defendant Santa Barbara County Sheriff's Deputy David Vanderpol; defendant Santa Barbara County Sheriff's Custody Sergeant Jeffrey Koeller; defendant Santa Barbara County Sheriff's Custody Deputy Ian Ur; defendant Santa Barbara County Sheriff's Deputy Jose Alejo (also referred to collectively as "Individual Defendants"). Each of the Individual Defendants are sued in their individual and official capacities.

8.     Plaintiffs are informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Does 1 through 20, inclusive, employees of the SBSO, were residents within the County of Santa Barbara, State of California. Plaintiffs are informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Does 1 through 20, inclusive, were employees, agents and/or servants of the County, and acted within the course and scope of said employment, agency and/or service, and possessed the power and authority and were charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of the County detention facilities, including were decedent was detained on the day he died, and concerning the means by which the life and safety of arrestees and detainees were to be secured, and what methods of ensuring timely, adequate and

1   responsive safety checks and medical attention to detainees placed within jail cells.

2       9.      Plaintiffs are ignorant of the true names and capacities of defendants sued

3   herein as Does 1 through 20, inclusive, and therefore sues these defendants by such

4   fictitious names. Plaintiffs are informed, believe and allege that each of the fictitiously

5   named defendants is legally responsible, intentionally, negligently, or in some other

6   actionable manner, for the events and happenings hereinafter referred to and described,

7   and thereby illegally caused the injuries, damages, and violations and/or deprivations of

8   rights hereinafter alleged. Plaintiffs will seek leave of Court to amend this Complaint

9   and state the true names and/or capacities of said fictitiously named defendants when

10  the same have been ascertained. The individual defendants were at all times mentioned

11  herein duly appointed, qualified and acting officers of the County and/or the SBSO or

12  its agents, and acting within the course and scope of such employment with the

13  County, with complete authority and ratification of the principal, the County, and acted

14  under color of the statutes, ordinances, regulations, policies, customs and usages of the

15  State of California and of the County of Santa Barbara. Each individual defendant is

16  sued in both his/her individual and official capacities.

17                  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

18      10.     Pursuant to Government Code § 910, defendant County of Santa Barbara

19  was presented a timely appropriate claim for damages on or around June 16, 2023, less

20  than six months after the incident. The claim was rejected on September 13, 2023.

21                              **FACTS**

22  **A.     General Allegations re Policy and Practice**

23      11.     Defendants County and SBSO have been on notice of the deficient

24  conditions in the Santa Barbra jails. In July 2020, the County entered into a stipulated

25  judgment in order to settle a federal civil rights class action brought by the non-profits

26  Disability Rights California and Prison Law Office. In that case, plaintiffs alleged that

27  the County held detainees in "deficient facilities that are overcrowded, understaffed,

28  and unsanitary; fail to provide minimally adequate medical and mental health care to

5

people incarcerated in the jail." *See Murray v. Cnty. Santa Barbara, et al.*, C.D. Cal. Case No. 2:17-cv-8805-GW at Dkt. No. 75-1 at 1. As part of the Stipulated Judgment, the parties entered into a "Remedial Plan," which required the county to implement remedial measures, *inter alia*:

-Screening on Intake: "[S]tandards and timelines to ensure that arriving prisoners are promptly screened for urgent health care needs." *See* Dkt. 75-1, Ex. A ("Remedial Plan"), at 5 of 56;

-Access to Care: "Patients with emergent medical conditions shall be treated or sent out for emergency treatment immediately." *Id.* at 6 of 56.

-Drug Withdrawal Procedures: "[D]rug/alcohol withdrawal policies and procedures that include specific guidelines as to the frequency and documentation of patient assessment." Id. at 10 of 56.

-Training: "The County shall develop and implement training…for Jail custody staff on the provisions describe in this remedial plan, as well as general correctional health care issues, including crisis intervention techniques." *Id.* at 55 of 56.

12.    Despite a stipulated judgment to resolve a federal civil rights class action, the County permitted further deplorable (and avoidable) conditions to continue. In January 2021 a Grand Jury report made a number of pertinent findings regarding an in-custody death from 2021. A "failure of communication" between the transporting patrol deputy and the intake registered nurse regarding "Inmate A's behavior, substance abuse and mental health issues…prevented Inmate A from receiving appropriate and timely" care.[1] *See* Grand Jury Report, January 2021, at 7, Finding 1. The Grand Jury further found that the "initial intake screening process failed to identify and record observations of Inmate A's substance use, which prevented Inmate A from receiving appropriate and timely 'urgent substance abuse/mental health care' as required by the Intake Screening Implementation Plan." *Id.* at 7, Finding 2.

---
[1] *Available at* https://sbcgj.org/wp-content/uploads/2022/01/SuicideSBJail.pdf

13.     The lethal problems in the Santa Barbara County jails persist. The *Murray* class action stipulate judgment required "Subject Matter Experts" to evaluate policies, procedures, practice and conditions at Santa Barbara County jails. One of these experts, Dr. Homer Venters, issued a report in September 2023, which noted that the County, "has reported on five overdose deaths-in-custody in the span of less than nine months (September 2022 to May 2023), a trend that calls for concerted and timely action."[2] "Third Monitoring Report of Dr. Homer Venters" at 12. Dr. Venters went on to note:

> I remain concerned with the use of locked cells in the intake area for management of people who have higher level medical or mental health needs during the intake process but who do not meet hospital admission criteria. These cells can leave people to deteriorate out of sight and sound of others.

*Id.* at 18.

14.     Defendants have failed to meet all of the requirements of the *Murray* settlement and have failed to meet their constitutional obligations to inmates and detainees. Thus, with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of Mr. Gonzalez, and all persons similarly situated (namely arrestees and detainees of the SBSO), defendants maintained, enforced, tolerated, permitted, acquiesced in, and applied polices or practices of, among other things:

a.     Selecting, retaining, and assigning deputies, civilian personnel and civilian volunteers to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates;

b.     Failing to adequately adopt and maintain security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following failures: failure to use security cameras to monitor

---

[2] *Available at* https://www.disabilityrightsca.org/system/files/file-attachments/2023-09-05%20FINAL%20Venters.Third%20Round%20Medical%20Care%20Report.pdf

the safety of detainees within jail cells; failure to install, maintain, use, and regular monitor the audio monitoring equipment of inmate- or sound-actuated audio monitoring system, which is capable of alerting personnel who can then respond immediately to an emergency (pursuant to California Building Code Title 24, Section 1231.2.22); failure to train sergeants, deputies, civilian personnel and civilian volunteers to monitor detainees and inmates and immediately respond to medical emergency, or any other predictable scenario where the physical safety of an inmate would be jeopardized; failure to monitor intoxicated detainees who are unable to care for themselves; failure to conduct proper safety checks pursuant to Title 15 (specifically Cal. Code Regs. Tit. 15, § 1027.5); failure to recognize potentially dangerous situations and circumstances that are likely to jeopardize the safety and health of detainees after being put on notice of the risk to a detainee.

c.      Failing to adequately train, supervise, and control deputies, civilian employees or volunteers proper law enforcement practices, including operating a jail facility;

d.      Failing to respond to emergencies or to conduct adequate safety checks;

e.      Failing to provide medical care to arrestees and detainees when exhibiting symptoms of a medical emergency, including a drug overdose, and instead simply taking a person in need of medical care and locking them in a cell.

12.     Plaintiffs are informed and believes, and on the basis of such information and belief alleges, that defendants County and SBSO ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard for the

8

1  safety, security, and constitutional and statutory rights of Jaime Angel Gonzalez and

2  Plaintiffs. The death of Mr. Gonzalez is a direct result of constitutionally inadequate

3  policies and practices implemented/maintained by Defendants Count and SBSO.

4  **B.    Decedent's Death at the North Facility**

5        13.    On or about December 28, 2022, decedent Jaime Gonzalez called 911

6  asking for assistance. Mr. Gonzalez had a history of drug addiction and suffered from

7  substance abuse disorders ("SUDs)." Mr. Gonzalez also suffered from bipolar disorder

8  and attention deficit hyperactivity disorder. These impairments considerably limited

9  one or more of Mr. Gonzalez's major life activities. As a child, Mr. Gonzalez was in

10  special education classes, and he also received SSI as a person with disabilities. On

11  December 28, 2022, Defendants Santa Barbara Sheriff's Deputies Heil and Reynoso

12  responded to Mr. Gonzalez's 911 call, and Mr. Gonzalez informed them that he did

13  not feel safe at the sober living residence where he resided and that he needed a ride to

14  the parole office. Defendants Heil and Reynoso agreed to give Mr. Gonzalez a ride and

15  while in their patrol car Mr. Gonzalez told them, "I need to take my medicine,"

16  complained about chest pains, and began acting like he was under the influence of an

17  illegal narcotic, specifically a central nervous system stimulant. Defendants Heil and

18  Reynoso decided to arrest Mr. Gonzalez rather than take him to the parole office (as

19  they had promised) or a hospital, and called other officers to the scene. Defendant

20  Santa Barbara Sheriff's Deputy David Vanderpol and defendant Santa Barbara County

21  Sheriff's Sergeant Richard Soto arrived and had an opportunity to observe and interact

22  with Mr. Gonzalez. Defendants Soto, Heil, Reynoso and Vanderpol all considered

23  calling an ambulance or taking Mr. Gonzalez to a hospital, and all four defendants

24  appreciated that Mr. Gonzalez was under the influence of narcotics, risked overdosing,

25  and were on notice that Mr. Gonzalez had complained that his chest was hurting,

26  saying word to the effect of, "my heart hurts," and "my heart feels like it's going to

27  explode." Instead of having medical staff determine whether Mr. Gonzalez was ok,

28  defendants Soto, Heil and Reynoso made the determination that Mr. Gonzalez would

not be treated by an ambulance or a hospital service and instead decided to take Mr. Gonzalez directly to jail. Mr. Gonzalez had no drugs or drug paraphernalia on his person so the arrest was not for actual drug possession.

14.     Instead of treating the situation like the medical emergency it was, defendants Soto, Heil, Reynoso and Vanderpol, transported Mr. Gonzalez to the Northern Branch Santa Barbara County jail facility ("North Branch"), which is operated by the SBSO and the County. While driving to, and shortly after arriving at North Branch, Mr. Gonzalez repeatedly complained that his chest and heart hurt but no one took him to a hospital and instead defendants focused on incarceration and not care and began the booking process.

15.     While being booked at North Branch non-defendant Custody Sergeant Segun Ogunleye told defendant Deputy Vanderpol that it was likely jail medical staff would not clear Mr. Gonzalez for booking given his apparent intoxication and complaints of pain, but Mr. Gonzalez was not taken to a hospital. Defendant Santa Barbara County Sheriff's Custody Sergeant Jeffrey Koeller saw Mr. Gonzalez's behavior and physical condition, believed he was under the influence of a drug, given the profuse sweating, signs of paranoia and complaints of chest pain, but proceeded to book Mr. Gonzalez rather than provide immediate emergency medical care.

16.     Defendants Sergeant Koeller, Santa Barbara County Sheriff's Custody Deputy Jose Alejo, and Santa Barbara County Sheriff's Custody Deputy Ian Ur physically subdued Mr. Gonzalez and transported Mr. Gonzalez to a "safety cell." Mr. Gonzalez at that point struggled against being physically subdued, and defendants Koeller, Alejo and Ur hobbled Mr. Gonzalez, applied a spit-mask over his face, and held his legs and hips, instead of transporting him to medical care. By the time defendants Koeller, Alejo and Ur tasnported Mr. Gonzalez to the "safety cell" and removed the spit-mask and hobble, Mr. Gonzalez had become unresponsive and lost consciousness. Only at that point was a nurse called. Mr. Gonzalez was reportedly given Narcan repeatedly, and oxygen, but had lost consciousness, and a paramedic

arrived approximately an hour after Mr. Gonzalez had arrived at the North Station. The ambulance transported Mr. Gonzalez to Marian Hospital in Santa Barbara County, two hours after Mr. Gonzalez had complained to defendants about his chest hurting and displaying signs of being under the influence of narcotics and signs of overdosing. Mr. Gonzalez was pronounced dead within less than an hour of arriving at Marian Hospital.

17.     Based on the individual defendants (and Does 1-20) decisions to incarcerate not provide access to medical care, critical time was lost, and Mr. Gonzalez died without seeing a doctor. This tragedy could have been avoided if Mr. Gonzalez was provided timely medical care. Mr. Gonzalez displayed objective symptomatology of an overdose, and indeed, was arrested for being under the influence. Individual defendants and Does 1-20 were aware that Mr. Gonzalez had made medical complaints, including about chest pain. However, individual defendants and Does 1-20 treated Mr. Gonzalez's drug overdose solely as a criminal violation and not as a medical emergency. Had Defendants County of Santa Barbara, the SBSO, individual defendants and Does 1-20 treated Mr. Gonzalez's ordeal like the medical emergency it was, had transported Mr. Gonzalez to medical care, or had provided him timely medical care while in their custody, Mr. Gonzalez would not have died.

## FIRST CLAIM FOR RELIEF

### Violation of Fourteenth Amendment – 42 U.S.C. § 1983

### (Against All Individual Defendants and Does 1-15)

18.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

19.     The individual and Doe defendants, while acting under color of law, deprived Jaime Angel Gonzalez of his civil rights under the Fourteenth Amendments to the United States Constitution when they subjected him to cruel and unusual punishment and acted with deliberate indifference and reckless disregard to their constitutional obligations towards Mr. Gonzalez, and denied Mr. Gonzalez due process

of law and by, among other things, the following acts:

       a.     Refusing to transport Mr. Gonzalez to medical care, despite being on notice that Mr. Gonzalez was experiencing chest pain, under the influence of narcotics and exhibiting obvious signs that he was overdosing;

       b.     Causing Mr. Gonzalez to go to jail, or remain in a jail when defendants knew, or should have known, that he was particularly vulnerable and in need of medical attention;

       c.     Not providing timely medical attention to Mr. Gonzalez and/or denying Mr. Gonzalez medical care on December 28, 2022.

20.    Plaintiffs are informed and believed that individual and Doe defendants were aware of how dangerous it was for Mr. Gonzalez to be placed in the North Branch, rather than a medical facility. Individual and Doe defendants intentionally, recklessly, and as described above, failed to take any security measures to protect a vulnerable pre-trial detainee and failed to provide access to medical care, and to conduct a proper safety checks and thus acted with deliberate indifference.

21.    The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among other various alternatives.

22.    As a direct and proximate result of Defendants' conduct, Mr. Gonzalez experienced physical pain, severe emotional distress, and mental anguish during his incarceration and time in County custody, as well as the loss of his life and other damages alleged in this Complaint. As a direct result of defendants' acts and omissions onto the decedent, Plaintiffs have suffered the loss of love, care, comfort, society, companionship, assistance, protection, affection, moral support, and support of

decedent. Plaintiffs brings this claim both as successors-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law, and Defendants deprived each Plaintiff of the right to a familial relationship in such a manner as to shock the conscience. Plaintiffs seek survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiffs also seeks attorney's fees.

## SECOND CLAIM FOR RELIEF

### Municipal Liability –Unconstitutional Custom, Practice, or Policy

### 42 U.S.C. § 1983

### (Against Entity Defendants)

23.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

24.     Plaintiffs are informed and believe and thereon alleges that at all times herein mentioned, Defendants County and SBSO (hereinafter referred to collectively as the Entity Defendants), with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Mr. Gonzalez and Plaintiffs, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

a.     Failing to ensure safety of inmates, especially those that might be unable to care for themselves, particularly by failing to conduct adequate inmate safety checks in accordance with LASD policy and state regulation (California Code Regulations, Title 15, Section 1027.5);

b.     Failing to establish policies and procedures to reduce the risk of inmate injury by providing for immediate response to inmate medical emergencies.

c.     Failing to conduct adequate medical screenings when put on notice that an inmate is experiencing a medical problem and/or under the influence of a

1    controlled substance;

2           d.      Failure to respond after being put on notice that an inmate or

3    detainee is in immediate physical danger and/or experiencing a medical crisis.

4           25.     By reason of the aforementioned policies and practices of Entity

5    Defendants, Plaintiffs experienced severe pain and suffering as a result of the loss of

6    Decedent's life, for which they are entitled to recover damages. The aforementioned

7    acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life,

8    and death.

9           26.     Entity Defendants, together with various other officials, whether named

10   or unnamed, had either actual or constrictive knowledge of the different policies,

11   practices, and customs alleged in the paragraphs above. Despite having knowledge as

12   stated above, Defendants condoned, tolerated, and through actions and inactions

13   ratified such policies. Said defendants also acted with deliberate indifference to both the

14   foreseeable effects and consequences of these policies and to the constitutional rights

15   of Plaintiffs, and other individuals similarly situated.

16          27.     Furthermore, the policies, practices, and customs implemented,

17   maintained and still tolerated by Entity Defendants were affirmatively linked to and

18   were a significantly influential force behind Plaintiffs' injuries.

19          28.     Plaintiffs have also been deprived of the life-long love, companionship,

20   comfort, support, society, care, and sustenance of decedent and will continue to be so

21   deprived for the remainder of her natural life.

22          29.     Plaintiffs brings this claim both as successors-in-interest to decedent, and

23   individually under the Fourteenth Amendment, in that defendants denied this

24   constitutional right without due process of law, and Defendants deprived each Plaintiff

25   of the right to a familial relationship in such a manner as to shock the conscience.

26   Plaintiffs seek survival damages, including for the nature and extent of decedent's

27   injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment

28   of life, as well as wrongful death damages under this claim; and attorney's fees.

**THIRD CLAIM FOR RELIEF**

**Municipal Liability –Inadequate Training/Policy of Inaction**

**42 U.S.C. § 1983**

**(Against Entity Defendants)**

30.     Plaintiffs incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

31.     At all times mentioned herein and prior thereto, Defendants County, SBSO (Entity Defendants) had a duty to train, instruct, supervise, and discipline their subordinates to assure they respected and did not violate constitutional and statutory rights of inmates, and to objectively investigate violations of detainees' rights, including, but not limited to the right to be safe and protected from injury in defendants' custody, under the Fourteenth Amendments to the U.S. Constitution.

32.     On information and belief the Entity Defendants facilitated, permitted, ratified and condoned similar acts and were deliberately indifferent to the health and safety of the inmates in general and Mr. Gonzalez in particular. Said defendants were a proximate cause of Plaintiffs' injuries and the death of Mr. Gonzalez in that Defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so. In particular, the entity defendants maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

a.      Failing to adequately train, supervise, and control custodians of jail inmates in the proper recognition when arrestees and detainees need medical attention;

b.      Failing to adequately train, supervise, and control custodians of jail inmates in properly monitoring, deterring, controlling and responding to medical emergencies faced by inmates and detainees;

c.     Failing to adequately train, supervise, and control custodians of jail inmates in the proper response to dangerous situations, such as a drug overdose;

g.     Failing to establish policies and procedures to reduce the risk of inmate injury by providing for immediate response to inmate medical emergencies and training their deputies to seek medical care, rather than default to incarnation of individuals in need of emergency medical care.

33.     As a result thereof, Mr. Gonzalez sustained the injuries and damages alleged herein, Mr. Gonzalez's rights under the Fourteenth Amendment, and Plaintiffs' rights under the Fourteenth Amendment were violated.

34.     By reason of the aforementioned acts and omissions, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of her natural life. The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and death.

35.     Accordingly, Entity Defendants County and certain Does each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

36.     Plaintiffs brings this claim both as successors-in-interest to decedent, and individually under the Fourteenth Amendment, in that defendants denied this constitutional right without due process of law, and Entity Defendants deprived each Plaintiff of the right to a familial relationship in such a manner as to shock the conscience. Plaintiffs seek survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiffs also seeks attorney's fees.

//

**FOURTH CLAIM FOR RELIEF**

**42 U.S.C. § 12131 et seq. (Title II of the Americans with Disabilities Act)**

**(Against Defendant County of Santa Barbara and Does 15-20)**

37.    Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth in this Complaint.

38.    Congress enacted the Americans with Disabilities Act ("ADA") upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

39.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

40.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

41.    Under the ADA, Defendant County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

42.    Because of his disability, Mr. Gonzalez was a "qualified individual" with an illness, disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his physical health condition as defined under the ADA, 42 U.S.C. § 12131(2), and Section 504 of the Rehabilitation Act ("RA") of

1   1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).[3]

2      43.    Defendant County is a public entity under Title II of the ADA. 42

3   U.S.C.§ 12131(1)(A). Title II of the ADA applies generally to jail "services, programs,

4   or activities." 42 U.S.C. § 12132. Defendant County's jails and medical services

5   therefore are covered under Title II of the ADA. Furthermore, respondeat superior

6   liability applies to Title II claims. Defendant County is therefore liable under Title II of

7   the ADA for the unlawful acts of its employees. Under the ADA, Defendant County is

8   mandated to develop an effective, integrated, comprehensive system for the delivery of

9   all services to persons with disabilities, and to ensure that the personal and civil rights

10  of persons who are receiving services under their aegis are protected.

11     44.    At all material times and as described in this Complaint, Mr. Gonzalez:

12          a.    Was an individual with a disability;

13          b.    Was otherwise qualified to participate in or receive the benefit of

14  Defendant's services, programs, or activities, including County jail and medical

15  services, programs, and activities;

16          c.    Was either excluded from participation in or denied the benefits of

17  the County services, programs or activities or was otherwise discriminated

18  against by County; and

19          d.    Such exclusion, denial of benefits or discrimination was by reason

20  of his disability.

21     45.    As described in this Complaint, the Entity Defendants failed to

22  reasonably accommodate Mr. Gonzalez's disability in the course of jailing him and

23  denying him medical care, causing him to suffer greater injury in the process than other

24  detainees or arrestees, including death. Entity Defendants' failures to accommodate Mr.

25  Gonzalez's disability include but are not limited to:

---

27  [3] The ADA applies to people who suffer from bipolar disorder and substance abuse disorders. Under
    the ADA and Section 504, a person with a disability is someone who has a physical or mental
28  impairment that seriously limits one or more major life activities, or who is regarded as having such
    impairments. These life activities include breathing, eating, working, going to school.

      a.     Causing the violation of Mr. Gonzalez's rights through all customs, policies, and practices identified above;

      b.     Failing to use lawful and appropriate policies, practices, and procedures for inmates with substance abuse disorders and bipolar disorders;

      c.     Failure to provide appropriate housing that accommodated Mr. Gonzalez's disability;

      d.     Failing to provide Mr. Gonzalez with competent and appropriate medical care;

      e.     Failing to institute proper medical precautions for Mr. Gonzalez;

      f.     Failing to implement a competent and reliable medical alert system for inmates who require immediate, urgent, and necessary medical aid, including properly staffed and equipped "man down" rollout teams; and

      g.     Failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected;

      h.     Other failures to provide accommodations as the evidence in this case may show.

46.     As a direct and proximate result of Entity Defendants' conduct, Mr. Gonzalez experienced physical pain, severe emotional distress, and mental anguish during his incarceration at the North Branch, as well as the loss of his life and other damages alleged in this Complaint.

47.     The aforementioned acts of individual defendants and Does 1-20 were conducted with conscious disregard for the safety of Mr. Gonzalez, and were therefore malicious, wanton, and oppressive. As a result, Defendant's actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged in this Complaint and to deter such conduct in the future.

**FIFTH CLAIM FOR RELIEF**

**29 U.S.C. § 794 (Rehabilitation Act)**

**(Against Defendants County of Santa Barbara and Does 16-20)**

52.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth in this Complaint.

53.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794.

54.    Mr. Gonzalez, at all times relevant in this Complaint, was a qualified individual with a disability within the meaning of the Rehabilitation Act because he suffered from a severe seizure disorder. *See* 29 U.S.C. § 705(20)(B).

55.    Defendant County "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. § 794(b).

56.    At all times relevant to this action, Defendant County received federal funding within the meaning of the Rehabilitation Act.

57.    At all material times and as described in this Complaint, Mr. Gonzalez:

a.    Was an individual with a disability;

b.    Was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including County jail and medical services, programs, and activities;

c.    Was either excluded from participation in or denied the benefits of the County services, programs or activities or was otherwise discriminated against by County; and

d.    Such exclusion, denial of benefits or discrimination was by reason of his disability.

20

58.     As described in this Complaint, Mr. Gonzalez was denied the benefits of services, programs, privileges, advantages, and opportunities to which Santa Barbara County Jail inmates and the general public are entitled to as a result of Mr. Gonzalez's disability, causing him to suffer greater injury in the process than other detainees or arrestees, including death. Defendants' failures to accommodate Mr. Gonzalez's disability include but are not limited to:

        a.     Causing the violation of Mr. Gonzalez's rights through all customs, policies, and practices identified above;

        b.     Failing to use lawful and appropriate policies, practices, and procedures for inmates with substance abuse disorders and bipolar disorder;

        c.     Failure to provide appropriate housing that accommodated Mr. Gonzalez's disability;

        d.     Failing to provide Mr. Gonzalez with competent and appropriate medical care;

        e.     Failing to institute proper medical precautions for Mr. Gonzalez;

        f.     Failing to implement a competent and reliable medical alert system for inmates who require immediate, urgent, and necessary medical aid; and

        g.     Failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected;

        h.     Other failures to provide accommodations as the evidence in this case may show.

59.     Defendants knew that it was substantially likely that Mr. Gonzalez would be harmed but failed to act on that likelihood, and thus acted with deliberate indifference, thereby intentionally discriminating against Mr. Gonzalez in violation of Section 504 of the Rehabilitation Act.

60.     As a direct and proximate result of Defendant's actions, Mr. Gonzalez

suffered injuries and damages causing great pain and leading to his death.

## SIXTH CLAIM FOR RELIEF

### Negligence

### Cal. Civil Code 1714, Cal. Gov. Code § 844.6(d)

### (Against All Individual Defendants and Does 1-20)

61.     Plaintiffs incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

62.     Mr. Gonzalez died of an apparent overdose after the individual defendants and Does 1-20 ignored his complaints that his chest and hear were hurting, the obvious signs that he was under the influence of narcotics and in danger of overdosing, and affirmatively chose to not take him to receive emergency medical care, and instead transported him to, and processed him through, the North Facility jail. The individual defendants and Does 1-20 had a duty to act reasonably to avoid, or foresee the risk that Mr. Gonzalez was at risk of physical harm and a duty to prevent harm to Mr. Gonzalez as someone calling for help and as an arrestee, and chose to overlook the risk of harm and incarcerate Mr. Gonzalez instead.

63.     Individual defendants and Does 1-20 herein, agents, servants, and/or employees of County, and within the course and scope of such agency, service, and/or employment, and under color of authority, were negligent in regards to Mr. Gonzalez's health, safety and welfare, and breached that duty of care by not acting reasonably under the circumstances of such risk, as described herein. In so doing, individual defendants and Dos 1-20 breached their duty of care by not acting reasonably under the circumstances of such risk and/or by failing to discharge their duties. Each of these defendants' breaches of duty were proximate and actual causes of injury to Mr. Gonzalez

64.     As a result, Mr. Gonzalez died. Each of the individual defendants and Does 1-20 were the proximate and actual cause of injury to Plaintiffs, who these defendants are liable to Plaintiffs as a result.

**SEVENTH CLAIM FOR RELIEF**

**Failure to Summon Medical Care**

**Cal. Gov't. Code § 845.6**

**(Against All Individual Defendants and Does 1-20)**

65.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

66.     At all time relevant on December 28, 2022, Mr. Gonzalez was in need of emergency medical care but individual defendants and Does 1-20 chose to ignore the obvious signs presented by Mr. Gonzalez and failed to summon medical care.

67.     The individual defendants and Doe defendants herein agents, servants, and employees of the County, and within the course and scope of that agency, service, and/or employment, and under color of authority, failed to take reasonable action to summons medical care for Mr. Gonzalez, despite knowing that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6.

68.     As a result, the decedent's injuries worsened, and without timely medical treatment, he died.

69.     As a result, Mr. Gonzalez sustained the injuries and damages alleged herein and Defendants are liable to Plaintiffs as a result.

**EIGHTH CLAIM FOR RELIEF**

**Wrongful Death**

**(Against All Individual Defendants and Does 1-15)**

70.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

71.     This cause of action arises under the general laws and Constitution of the State of California and is brought pursuant to California Code of Civil Procedure § 366.71 et. Seq. Section 377.60 specifically states, "[a] cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) the

23

decedent's …children…who would be entitled to the property of the decedent by intestate succession." J.S. is decedent's beneficiary and successor-in-interest (as defined in Section 377.11 of the California Code of Civil Procedure)

72. The civil rights violations alleged herein, as well as defendants' other tortious acts, omission and negligence under California Civil Code § 1714 form the basis for this cause of action.

73. The Individual Defendants and Does 1-20 are responsible for the wrongful death of Mr. Gonzalez because of their deliberate, reckless, and negligent acts and omissions as alleged herein.

74. The Individual Defendants and Does 1-20 proximately caused the wrongful death of Mr. Gonzalez because of their deliberate, reckless, and negligent acts and omissions as alleged herein.

75. As a direct, legal and proximate result of said conduct of Individual Defendants and Does 1-20, Plaintiffs sustained damages for the loss of love, companionship, comfort, affection, society, solace and moral support of Mr. Gonzalez.

## DAMAGES

76. As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiffs suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiffs to sustain general damages in a sum to be determined at trial.

77. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiffs suffered the denial of their fundamental constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, which have caused Plaintiffs to sustain damages in a sum to be determined at trial. As a further direct and

proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and/or will continue to incur medical expenses, including psychological treatment.

78.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiffs suffered past and future losses of income that have caused them to sustain economic damages in a sum to be determined at trial.

79.     Individual defendants and Does 1-20, excluding Defendants County and SBSO, acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiffs to exemplary and punitive damages in an amount to be proven at the trial in this matter.

*///*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows against defendants:

    1.     General and Special damages, including both survival and wrongful death damages, in an amount according to proof;

    2.     Exemplary and punitive damages against each individual and Doe defendant, but not against the entity defendants, in amounts according to proof;

    4.     Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

    5.     Such other relief as may be warranted or as is just and proper.

**LAW OFFICES OF ERIN DARLING**

DATED:  March 8, 2024

By:    */s/ Erin Darling*
        Erin Darling
        Attorney for Plaintiffs,
        SANDRA ESCOBEDO,
        As Guardian ad Litem for J.L.G., a minor,
        and T.J.G., a minor
        TAWNY GONZALEZ

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff Tawny Gonzalez and plaintiff Sandra Escobedo, as Guardian ad Litem for J.L.G. and T.J.G. hereby demand trial by jury on all issues so triable.

**LAW OFFICES OF ERIN DARLING**

DATED:  March 8, 2024

By:   _/s/ Erin Darling_

Erin Darling
Attorney for Plaintiffs,
SANDRA ESCOBEDO,
As Guardian ad Litem for J.L.G., a minor,
and T.J.G., a minor
TAWNY GONZALEZ